**Glenann WILKERSON,
Plaintiff-Appellant,**

v.

**SIEGFRIED INSURANCE AGENCY, INC., an Oklahoma corporation; Cook, Treadwell & Harry, a Tennessee corporation; and Cook Industries, Inc., a Delaware corporation, Defendants-Appellees.**

No. 80-2096.

United States Court of Appeals,
Tenth Circuit.

July 23, 1982.

George Hooper of Boyd & Parks, Tulsa, Okl., for plaintiff-appellant.

John S. Athens, Tulsa, Okl. (Craig W. Hoster, Tulsa, Okl., with him on the brief) of Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., for defendants-appellees.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

This appeal is taken from the trial court's judgment, following a full evidentiary hearing, granting defendant-appellee Siegfried Insurance Agency, Inc. (Siegfried) a motion for summary judgment and dismissing the second amended complaint of plaintiff-appellant Glenann Wilkerson (Wilkerson). Wilkerson sought damages for her alleged wrongful employment discharge by Siegfried based upon age and sex discrimination claimed to be violative of 29 U.S.C. § 621, *et seq.*, and 42 U.S.C. § 2000e–5.

This case was before this court previously. In *Wilkerson v. Siegfried Ins. Agency, Inc.*, 621 F.2d 1042 (10th Cir. 1980), we reversed a summary judgment in favor of Siegfried and remanded for further proceedings on the ground that the issue of equitable tolling and estoppel advanced by Wilkerson " . . . cannot here be resolved on the basis of affidavits." 621 F.2d at p. 1045. By so holding, we were not suggesting that there be a finding of equitable tolling or estoppel. We simply held that because the issue involves the credibility of various witnesses, it was error for the district court, in reliance on the affidavits, to resolve the dispute as to whether Wilkerson's failure to comply with the 180-day statutory time limit within which she was to file a notice of intent to sue with the Department of Labor under 29 U.S.C.

§ 626(d)(1) or the statutory limit within which to file her sex discrimination charge as required by Title VII, was subject to possible tolling and estoppel. We did uphold the summary judgment finding that Wilkerson was discharged by Siegfried on March 24, 1975 and that none of the later filings by Wilkerson were timely as required by the respective statutes. The primary issue to be resolved on remand, then, was the merit, if any, in Wilkerson's contention that she did not timely file the required notices because she was misled by Siegfried, thus causing her to file beyond the statutory time limits. Also considered was Wilkerson's contention that her ignorance of the filing requirements was attributable to Siegfried's failure to post notices as required by the statute.

In *Wilkerson v. Siegfried, supra*, we recommended that the trial court, on remand, examine the tolling-estoppel guidelines set forth in *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975). There the court recognized that secret preferences in hiring and subtle means of illegal discrimination are unlikely to be readily apparent to the individual discriminated against and that employers who discriminate often cloak their policies with a semblance of rationality, and may seek to convey to the victim an attitude of neutrality or even sympathy. On this predicate, the *Reeb* court held that the time period prescribed under the statute would not begin to run until the facts that would support a charge of discrimination " . . . were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." 516 F.2d at p. 931. In our view, the district court, in the instant case, properly applied the *Reeb* standard. In light of the limited inquiry directed by our remand, we will not repeat in detail the facts set forth in our prior opinion, except to the extent necessary for our review here.

On appeal, Wilkerson contends that the trial court erred in finding that the evidence did not support her contention that equitable considerations, *i.e.*, untrue infor-

mation given to her by Siegfried which she relied upon to her detriment (in that it prevented her from timely discovering facts of discrimination), estopped Siegfried from asserting the timely filing requirements as a defense. Wilkerson further contends that Siegfried did not post notices of her right to file her age and discrimination charges.

## I.

■ The key, specific ground relied on by Wilkerson was pinpointed by the trial court: That on March 14, 1975, when Siegfried officers advised her that she was discharged from her position with that agency because her job had been discontinued in that her duties or a substantial part of her duties were going to be transferred to the main office in Memphis, Tennessee, they knew that these representations were false.

The district court found, and we agree, that there is substantial evidence supporting its findings that Wilkerson was terminated for the reasons she was told and that these reasons were not a pretext for discrimination; further, that there are no other equitable considerations which would excuse Wilkerson's late filing of her charges of age and sex discrimination.

We affirm the trial court after a full review of the record. In *Lyles v. American Hoist & Derrick Co.*, 614 F.2d 691, 694 (10th Cir. 1980), we defined the parameters of our review:

> Findings of the trial court must be upheld unless they are determined to be clearly erroneous. *Francia v. White*, 594 F.2d 778 (10th Cir. 1979); *Volis v. Puritan Life Insurance Company*, 548 F.2d 895 (10th Cir. 1977). A trial court's findings are not to be deemed clearly erroneous unless, on the entire record, we are left with a definite and firm conviction that a mistake has been made, *Diggs v. Western Electric Company, Inc.*, 587 F.2d 1070 (10th Cir. 1978), and that a judgment cannot be affirmed on any ground arising from the record. *Jaffke v. Dunham*, 352 U.S. 280 [77 S.Ct. 307, 1 L.Ed.2d 314] (1957); *Casto v. Arkansas-Louisiana Gas Company*, 597 F.2d 1323 (10th Cir. 1979).

The crux of Wilkerson's contention is that Siegfried officers misrepresented the true basis for her termination because rather than discontinuing the duties she had performed and transferring them to the Memphis main office, Siegfried, within one week of her termination, employed one Steve Snyder to fill and perform the position and duties she had performed. Wilkerson thus argues that her position was not in fact eliminated or her duties transferred to Memphis; rather, that Snyder was employed to fill her position and to perform her duties with Siegfried. This, then, was the claimed pretext creating the discriminatory termination.

We believe that the trial court's oral and written findings are supported with substantial evidence in the record which we summarize, as follows:

Cook, Treadwell & Harry of Memphis, Tennessee, is a parent insurance company with some fourteen local agencies or divisions, which, commencing in 1971, included Siegfried of Tulsa, Oklahoma. One Steve Snyder first took up employment with CTH in Memphis in September, 1972. He was assigned to the auditing department. His duties required that he "ride the circuit" of the CTH agencies for auditing purposes.

In January-February, 1975, Hank Grey, controller, Van Zeiler, vice-president of the local agencies, accountant Don Burkett and Snyder had a number of meetings in the CTH office relative to the need to rectify accounting and budget reporting problems CTH had encountered with its local agencies and general agencies. It was determined that CTH should adopt a uniform method of accounting for use by the various agencies and thus accomplish a consolidation of accounting records in the CTH home office. The officials determined that this procedure would likely reduce costs and overhead expenses and simplify reports for various state insurance commissioners, state insurance departments and outside auditors.

The CTH officials prepared a Financial Policy and Procedure Manual for use of the local agencies designed to accomplish cen-

tralized, standardized accounting methods and reports for submission to CTH. The CTH officials determined prior to March 14, 1975, when Wilkerson was notified that her position with Siegfried was terminated, that Snyder would go to Tulsa for the purpose of initiating the standardized, centralized accounting system at Siegfried as its "model agency". The officials had determined prior to Snyder's arrival in Tulsa that Wilkerson's salary was excessive and her position was not necessary in light of the new, streamlined accounting and budgetary procedures to be introduced.

Snyder rented an apartment in Tulsa for a six-month term, which was the period contemplated to accomplish the new centralized procedures at Siegfried. Snyder intended to return to Memphis when his work at Siegfried was accomplished. However, Snyder changed his mind. He stayed on at Siegfried, but in the sales division which does not relate in anywise to Wilkerson's position.

In the process of his duties, Snyder did assume some of the duties previously performed by Wilkerson and from time to time he sought advice and assistance from Wilkerson relative to matters at Siegfried. The trial court recognized that while it apparently appeared to Wilkerson that Snyder had been sent to Tulsa within one week of her termination to take over her position, that the facts clearly show otherwise.

The evidence is overwhelming that the termination of Wilkerson was motivated in order to reduce overhead costs and to centralize standardize accounting procedures. Wilkerson's termination on March 14, 1975, was not motivated by age or sex discrimination. It is significant, too, that Snyder remained on the CTH payroll until February, 1976, almost one year following Wilkerson's termination.

The trial judge's finding that CTH employed procedures upon its local agencies to effect control and management of operating accounting procedures and budgets and approvals, in some instances, of capital expenditures, cash management and banking, all of which were central to terminating Wilkerson and eliminating her position with Siegfried is supported by the evidence. The court found that Wilkerson was aware of CTH's plans for centralization and standardization. While the court recognized that when Snyder came to Siegfried close on the heels of Wilkerson's termination that this justified her *suspicion* that he was performing her job and that her termination was merely a pretext, the evidence, nevertheless, does not support that suspicion. [R., Vol. III, pp. 8–10]. We agree.

## II.

Wilkerson relies upon *Pirone v. Home Ins. Co.*, 507 F.Supp. 1281 (S.D.N.Y. 1981), for the proposition that "... ignorance [on part of aggrieved employee] that is partly attributable to the employer's failure to comply with its statutory obligation to post the required conspicuous notice, 29 U.S.C. § 627, will mandate tolling until the prospective plaintiff acquires actual knowledge of the requirements...." This reliance is specious. This is so first because the simple failure to post the notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge. *Smith v. American President Lines, Ltd.*, 571 F.2d 102 (2d Cir. 1978); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5th Cir. 1975). Second, in *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), *aff'd per curiam by an equally divided court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), we concluded that the employer's failure to supply the information directly contributed to the plaintiff's failure to file. Here, not only does the record evidence that the notices had been posted, but, further, that Wilkerson had knowledge of the time limits for filing of discrimination charges inasmuch as she, as a well paid Vice President of Siegfried, was responsible for posting such notices concerning the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623. Certain posters relating thereto were found in Wilkerson's personal files with perforations indicating they had been posted.

In *Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the Supreme Court held, just as this court had in *Dartt v. Shell Oil Company, supra, Cottrell v. Newspaper Agency Corporation,* 590 F.2d 836 (10th Cir. 1979), and *Carlile v. South Routt Sch. Dist. RE 3–J,* 652 F.2d 981 (10th Cir. 1981) that the filing of a timely charge of discrimination under Title VII with the Equal Employment Opportunity Commission "... is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." At ——, 102 S.Ct. at 1132.

In *Cottrell v. Newspaper Agency Corp., supra,* we held that allegations advanced by a plaintiff that he or she was misled or uninformed of time limits within which to file employment discrimination charges were appropriate only if the evidence established that the defendant employer had actively misled the plaintiff in respect to the cause of action. We reiterated in *Carlile v. South Routt Sch. Dist. RE 3–J, supra,* the proposition that although the filing of the requisite notice is not jurisdictional in the traditional sense, equitable tolling would be appropriate only if the employer had actively misled the plaintiff [or misrepresented material facts to the plaintiff] respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his or her rights. None of these exceptions exist in the case at bar. Thus, there is no justification for the invocation of the power of equity to toll the limitation period.

WE AFFIRM.