Dorothy K. BILLINGS, Plaintiff,

v.

WICHITA STATE UNIVERSITY, et al., Defendants.

No. 81–1528.

United States District Court, D. Kansas.

March 3, 1983.

---

**1350**

James S. Phillips, Jr., Wichita, Kan., for plaintiff.

Leslie A. Kulick, Asst. Atty. Gen., Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This employment discrimination suit has been brought by a female member of the Wichita State University faculty who alleges that for over a decade she has been paid less than similarly situated male colleagues in the University's Anthropology Department. Plaintiff seeks relief pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Equal Pay Act, 29 U.S.C. § 206(d)(1); Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.;* and the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* Defendants have moved to dismiss plaintiff's claims on various grounds; as explained below, plaintiff's claims under Section 1983, under Title IX, and under the Kansas Act Against Discrimination are barred by the Eleventh Amendment, her claims under Title VII are time barred, and her Equal Pay Act claims are time barred to the extent that they involve salary differentials that were established prior to October 2, 1978.

■ It is, of course, now well established that the universities established by the State of Kansas and governed by the Kansas Board of Regents function as alter ego agencies of the state and share its Eleventh Amendment immunities. *Brennan v. University of Kansas,* 451 F.2d 1287, 1290–91 (10th Cir.1971); *Holt v. Wichita State University,* No. 82–1172 (D.Kan. Sept. 7, 1982). It is also long established that the Eleventh Amendment bars lawsuits brought against state functionaries in their official, rather than personal, capacities, *Sundry African Slaves v. Madrazo,* 26 U.S. (1 Pet.) 110, 122–23, 7 L.Ed. 73 (1828), since suing a state officer in his official capacity amounts to "merely making him a party as a representative of the state, and thereby attempting to make the state a party," *Ex Parte Young,* 209 U.S. 123, 157, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908). Notwithstanding plaintiff's interpretation of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), Eleventh Amendment immunity is not limited to lawsuits where funds payable from the state treasury are sought, but extends to suits where naught but injunctive relief is requested. *Cory v. White,* —— U.S. ——, ——, 102 S.Ct. 2325, 2328, 72 L.Ed.2d 694, 699 (1982). These principles mandate that unless plaintiff can demonstrate that her claims fall within one of the three established exceptions to the Eleventh Amendment bar, her suit against these defendants must be dismissed. *See Holt, supra; Annis v. Kansas State University,* No. 78–4336 (D.Kan. Feb. 18, 1983).

■ The most significant and oft-invoked exception to the Eleventh Amendment bar to suits against states and their officers involves the famous *Ex Parte Young* fiction that state officials who violate federal law or otherwise act *ultra vires* are "stripped of [their] official or representative character" and may be held personally liable for their individual acts. 209 U.S. at 160, 28 S.Ct. at 454. Plaintiff, however, cannot avail herself of this exception because the only defendants named in their personal capacities, Clark Ahlberg and Paul Magelli, have been dismissed as individuals from this lawsuit as part of a settlement in which plaintiff received some $5,000.00 from Ahlberg's and Magelli's insurors.

■ The second exception to the Eleventh Amendment is where the state itself has waived its immunity. While this waiver need not be express, the Supreme Court has made it plain that waiver by state

legislative enactments will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). Plaintiff contends that the Kansas Legislature's enactment of the Kansas Tort Claims Act, K.S.A. 75–6101 *et seq.,* is sufficient evidence of waiver, and relies on the decision in *Marrapese v. State of Rhode Island,* 500 F.Supp. 1207 (D.R.I.1980), which held that Rhode Island had waived its immunity by virtue of a similar enactment. The state waiver argument, however, has consistently been rejected by the other judges in this Court, *see Annis, supra, and cases cited therein,* who have construed the Kansas Tort Claims Act's partial waiver of sovereign immunity as limited to suits brought in *state* court, and unlike the Rhode Island Legislature, 500 F.Supp. at 1222, the Kansas Legislature cannot be said to have sat silent in the face of judicial decisions announcing that it had, by one enactment or another, waived the state's immunity from suit in federal court: no such decisions exist. Moreover, this Court cannot accept the *Marrapese* court's reasoning that *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), which dealt in part with an *individual's* waiver of his Miranda rights, or *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), which found that *Congress* had partially abrogated the states' constitutional immunity by passing the Attorney Fees Award Act, somehow denoted that a *state's* purported waiver of immunity should be judged by a more relaxed standard than *Edelman's* literal language would indicate. Simply put, this Court takes the *Edelman* court at its word.

■■ The last exception to the Eleventh Amendment arises when Congress, exercising the powers granted by Section 5 of the Fourteenth Amendment, chooses to abrogate state immunity from suit in federal court. Recent decisions have found the necessary evidence of congressional intent where Congress has explicitly provided for a private action against state governments, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), or where a statute's legislative history made it plain that "Congress considered and firmly rejected the suggestion that states should be immune," *Hutto,* 437 U.S. at 698 n. 31, 98 S.Ct. at 2577 n. 31, but *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979), has made it plain that these sorts of clear and positive indicia of intent to subject a state to suit in federal court must exist to conclude that Congress has overturned the constitutionally guaranteed immunity of the states.

*Fitzpatrick,* of course, expressly held that Title VII suits against state governments were not barred by the Eleventh Amendment, and it is plain that that case's reasoning extends to suits pursuant to the Equal Pay Act, which, like Title VII, expressly provides for private causes of action against state government employers. Title IX, however, does not expressly provide for a private right of action against anyone, much less against state governments, *see Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and this Court has searched that statute's legislative history in vain for even the whiff of a suggestion that Congress considered—much less firmly rejected—any suggestion that states ought to be immune from suit under Title IX. *Quern* expressly held, of course, that Section 1983 did not reflect any congressional intent to abrogate the states' Eleventh Amendment immunity, while the Kansas Act Against Discrimination is a creature of the Kansas Legislature, not of Congress. It accordingly follows that while plaintiff's Title VII and Equal Pay Act claims are not barred by the Eleventh Amendment, her remaining claims are.

■ Defendants also argue that plaintiff's Title VII claims were not filed within the ninety day limitations period of 42 U.S.C. § 2000e–5(f). It seems that plaintiff first filed formal complaints with the Equal

Employment Opportunity Commission (EEOC) and Kansas Commission on Civil Rights (KCCR) in October 1973. As required by Title VII, the EEOC deferred to the KCCR, which investigated plaintiff's complaint, and in November 1976 determined that there was no probable cause to credit plaintiff's allegations of sex discrimination. Plaintiff was not satisfied with the KCCR's determination and requested that the EEOC itself deal with her complaint. In about March 1977, the EEOC determined that it would take jurisdiction of plaintiff's claims, and it conducted a relatively elaborate investigation. On June 7, 1978, the EEOC formally found reasonable cause to believe that defendant Wichita State University had, because of plaintiff's sex, paid her less than her male colleagues. EEOC attempts at conciliation between plaintiff and defendants failed, and the EEOC sent "failure to conciliate" notices to plaintiff and to defendants on September 22, 1978. At about this time, EEOC officials informed plaintiff that the EEOC would further review plaintiff's case and within 30 days determine whether to file suit on her behalf. Additional contacts between plaintiff and the EEOC gave plaintiff the impression that her case was lost somewhere within the EEOC bureaucracy. In fact, plaintiff's case had been referred to the United States Department of Justice, which has the sole authority to bring suit against a government employer, and that agency determined not to file suit on plaintiff's behalf. On January 31, 1979, the Justice Department sent plaintiff her "right to sue letter" by certified mail, return receipt requested. It is unclear from the record whether plaintiff received post office notices of certified mail or not, but for whatever reason, the letter went unclaimed and was returned to the Justice Department.

In February 1980, about one year after plaintiff had last had communication with the EEOC, plaintiff wrote a letter to an EEOC official in Kansas City in which she inquired about the status of her case and expressed the hope that the EEOC would file suit on her behalf. This letter was answered by another EEOC official in March 1980, and plaintiff was informed that only the Justice Department had statutory authority to sue government employers, and that plaintiff should contact the Justice Department to determine the status of her charges. Plaintiff made such an inquiry in late April 1980, but received no reply.

In late January 1981, plaintiff contacted United States Representative Ronald Dellums of California, and asked him to intercede with the Justice Department on her behalf. On March 4, 1981, Congressman Dellums wrote to plaintiff and informed her that the Justice Department had issued her a right to sue letter on January 31, 1979; the congressman had obtained from the Justice Department and enclosed with his letter to plaintiff an actual and complete copy of the original right to sue letter. The congressman's letter, which was received by plaintiff in early March 1981, also stated that the Justice Department would "be glad to reissue a second notice of your right to sue." Plaintiff wrote a letter, which she aptly described in her deposition as "snotty," to the Justice Department on March 27, 1981, and requested that a right to sue letter be reissued, but she received no immediate reply. On May 18, 1981, plaintiff wrote to United States Representative Dan Glickman and requested his help. On July 9, 1981, the Justice Department sent plaintiff a right to sue letter, which plaintiff received about July 12, 1981. This letter is in all material respects identical to the January 1979 letter. Plaintiff filed this lawsuit on October 2, 1981.

42 U.S.C. § 2000e–5(f)(1) provides in relevant part that:

> If a charge filed with the Commission is dismissed, or if ... the Attorney General has not filed a civil action in a case involving a ... governmental agency, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party ... the Attorney General ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge....

While plaintiff contends that she did not receive the "notice" necessary to trigger the running of the ninety day period until July 12, 1981, this Court must disagree. The right to sue letter that plaintiff received from the Justice Department, through the agency of Congressman Dellums, in March 1981, was in every material respect identical to the letter sent January 31, 1979, and a right to sue letter is not a talisman whose power is lost if it is xeroxed or passed through a congressman's hands. If the March letter was not sufficient to constitute the notice required by statute, then the running of the limitations period would be postponed at least until plaintiff might bestir herself to seek a new copy that in no practical sense improves on the old. As recently stated by the Court of Appeals for the Eleventh Circuit, "there is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation period meaningless." *Lewis v. Conners Steel Co.,* 673 F.2d 1240, 1242 (11th Cir.1982). It follows that plaintiff did not bring her Title VII claims within the ninety day limitations period.

To be sure, the ninety day limitations period is potentially subject to equitable tolling, *Carlile v. South Routt School District Re 3–3,* 652 F.2d 981, 985 (10th Cir. 1981), but the Court does not believe that the present case merits application of the doctrine. Limitation periods do not exist for the purpose of wreaking retribution on the dilatory plaintiff, but to provide defendants with security and stability in their affairs. In the case of Title VII, the abnormally short limitation period within which an employer may find repose is the complement to intrusive investigative scrutiny by both state and federal bureaucracies that can—and in this case did—consume many years. As far as defendants were aware, that scrutiny ended in 1978, and plaintiff was no doubt accurate when she wrote, in April 1980, that defendants "believe that their entanglement with EEOC is blessedly in the past." The law is clear in this circuit that in Title VII cases equitable tolling is "appropriate only if the employer had actively misled the plaintiff ... respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his or her rights." *Wilkerson v. Siegfried Insurance Agency, Inc.,* 683 F.2d 344, 348 (10th Cir.1982). In this case, it cannot realistically be said that plaintiff could not have timely filed her lawsuit, and it is unnecessary to assign the blame for its delay—whether to plaintiff, some unknown mailman, a faceless Justice Department bureaucrat, or even Congressman Dellums—since it is clear beyond cavil that defendants are not the culprits.

■ There remain plaintiff's Equal Pay Act claims. If, as plaintiff alleges, defendants' violations of this act were "willful," the applicable limitations period is three years. 29 U.S.C. § 255. The Court understands that faculty salaries at Wichita State University are set once annually, and under *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), it is plain that plaintiff's Equal Pay Act claims are time barred as to salary differences between plaintiff and her male colleagues, of which plaintiff had notice before October 2, 1978. The record does not disclose when plaintiff had notice of any salary differentials as to any given year, although the Court would presume that plaintiff's claims as to academic years after 1978–79 are still alive. The Court cannot accept defendants' bizarre argument that once they have paid a female employee less than her male counterparts for three years, and have not been sued, they are immune from the mandates of the Equal Pay Act. Nor does the Court believe that the defendants have established either unreasonable delay by plaintiff or such material prejudice to defendants as would justify invocation of the doctrine of laches.

IT IS ACCORDINGLY ORDERED that plaintiff's claims under 42 U.S.C. § 1983, Title VII, Title IX, and the Kansas Act Against Discrimination be dismissed. The case will continue as to plaintiff's Equal Pay Act claims.