Pamela N. BRINKMAN, Plaintiff,

v.

STATE of Kansas DEPARTMENT OF CORRECTIONS, Defendant.

No. 93–2323–JWL.

United States District Court, D. Kansas.

Sept. 13, 1994.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for plaintiff.

Lisa A. Mendoza, Kansas Dept. of Corrections, Edward F. Britton, Jr., State of Kansas, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

## I. INTRODUCTION

This matter is currently before the court on the motion of the defendant, the State of Kansas Department of Corrections (KDOC), to dismiss or in the alternative for summary judgment (Doc. # 42). Plaintiff, Pamela N. Brinkman, a former employee of the KDOC, seeks relief pursuant to the Civil Rights Act of 1964, the Civil Rights Act of 1991 as amended, 42 U.S.C. § 2000e *et seq.* (Supp. 1992), and the Kansas Act Against Discrimination, K.S.A. 44–1001 *et seq.* (1993) (KAAD).

Plaintiff alleges that the KDOC discriminated against her on the basis of her sex in violation of Title VII, 42 U.S.C. § 2000e–2(a)(1), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (PDA), and the KAAD, K.S.A. 44–1009(a)(1). She further contends that the defendant unlawfully discriminated against her by failing to make reasonable accommodations for her disability or handicap in violation of the KAAD, K.S.A. 44–1009(a)(8)(E). Defendant denies that it discriminated against plaintiff either on the basis of her sex or on the basis of her alleged disability or handicap.

For the reasons more fully set forth below, defendant's motion is granted in part and denied in part. Summary judgment is granted in favor of defendant on plaintiff's Title VII and PDA claim. The court declines to exercise its supplemental jurisdiction over plaintiff's remaining state law claims, and, thus, dismisses those claims without prejudice.

## II. FACTS

The following facts are uncontroverted or are facts accepted in the light most favorable to plaintiff for purposes of this summary judgment motion. Plaintiff began working at the KDOC on April 18, 1988, as a corrections officer stationed at the Lansing Correctional Facility (LCF), in Lansing, Kansas. She remained a corrections officer for the duration of her employment. Plaintiff was pregnant twice during her tenure with the KDOC. It is her second pregnancy which is the focus of this action.

Plaintiff gave birth to her third child in April of 1991. Prior to giving birth, plaintiff received twelve notes from her personal obstetrician, Dr. Adnan Ashkar, which were "excuses" for missing work or were notes requesting that plaintiff engage only in "light duty" at work. On May 10, 1991, while plaintiff was on maternity leave, she received a note from Dr. Ashkar indicating that she could return to work and engage in "light duty" as of May 12, 1991. The notice stated she was to be on light duty "until further notice." Dr. Ashkar testified that it was his intention that she stay on light duty for about six weeks. Plaintiff's return to LCF on May 12th cut short what she originally intended to be a more extended maternity leave. She contends that she was forced to return to work so that she would not lose her health insurance coverage or benefits.

At various times while she was pregnant, plaintiff experienced pain in her knees and ankles. This pain continued after her pregnancy.

On September 3, 1991, approximately four months after the birth of her child, plaintiff visited her family physician, Dr. Peter J. Christiano, for a sinus problem. While there, she mentioned that she had pain in her left ankle. In response to plaintiff's request, her doctor wrote her a note dated September 4, 1991, indicating that she was "not to do increased walking until further noted." The note did not refer specifically to plaintiff's position at the KDOC, nor did it attempt to list what duties were to be performed or avoided. Dr. Christiano did not speak with any of plaintiff's supervisors, nor was he specifically aware of the policies or procedures of the KDOC regarding light duty assignments at LCF. He was also not aware of the specific duties required to be performed by plaintiff at the facility.

On December 28, 1991, plaintiff again visited Dr. Christiano, complaining that her knees and ankles were hurting her. She again requested, and was given, a note from her doctor stating that she work only light duty. Dr. Christiano used the term "light duty" in a general sense and intended that it would mean she should "cut down" on walking or those activities causing her pain.

On December 30, 1991, plaintiff complained to her shift supervisor that her light duty requests were not being accommodated.

It was not clear to plaintiff's supervisors, from the way Dr. Christiano's December 28th note was written, whether plaintiff was to be off work until January 13, 1992, and then resume light duty work, or whether plaintiff was to work light duty until January 13, 1992. Plaintiff was requested to obtain some clarification of the meaning of the note. Plaintiff then presented defendant with a second note from Dr. Christiano indicating that she should work light duty until January

13, 1992, at which time she could return to regular duty. Although the note says "return to regular duty on 1–13–92," plaintiff contends that Dr. Christiano put her on light duty "until further notice."

Plaintiff was requested to meet with the "rostering captain," James McMillan, on January 2, 1992, concerning the last notes from her doctor. Plaintiff contends that this meeting escalated into a "berating" session during which plaintiff was yelled at, intimidated and physically restrained from leaving. On January 3, 1992, plaintiff made a formal written complaint to Walt Keene stating that her light duty requests were not being accommodated.

Plaintiff's last day on the job was January 20, 1992. Plaintiff does not specifically state why she never returned to work. Implicit in her argument, however, is the contention that because she was not accommodated, in that her light duty requests were not accommodated, she was forced to abandon her job. Plaintiff testified in her deposition that she repeatedly asked for light duty, that her requests were not accommodated, and that her health deteriorated as a result.

From January of 1991 to December of 1991, plaintiff worked 170 days at KCF. Of those 170 days, she worked 118.5 days in "visitor's reception," 28 days in "tower 7," 16 days in the "visiting room," two days in the "maximum visiting control/bubble," two days as an "escort," two days on "suicide watch" and one day as a telephone operator. Beginning in 1992, she no longer worked at "visitor's reception," worked the "maximum security visiting room" six days and worked as an escort or in "ECA" a few days. The maximum security visiting room, escort and ECA are not considered light duty posts according KDOC personnel policies. Plaintiff also contends that tower 7 was not a light duty post and could not be considered as such with regard to her injuries because of the climbing of stairs and walking that is involved.

On January 23, 1992, Warden David R. McKune wrote to plaintiff noting that he was aware that she was hospitalized and that she was requesting temporary disability. He advised her that as of January 25, 1992, she would have no leave balances and would enter leave without pay status. He further informed plaintiff that a permanent employee may be granted leave without pay status for a reasonable period of time, but that it was necessary that she provide an approximate projected length of absence. He also advised her of the effect her 'without pay status' would have on her health insurance coverage and her options in that regard.

On February 13, 1993, Dr. Christiano wrote a letter stating the following (although it is unclear whether defendant received this letter, the court will assume for purposes of this motion, that the KDOC received the letter):

> Ms. Brinkman is a patient of mine with degenerative arthritis effecting [sic] her knees, ankles, adn [sic] elbows. I feel that probably the prolonged walking and standing she does on her job is aggravating the arthritis. I feel she should be on light duty. I have sent other slips with her stating she was to be on light duty.

On March 11, 1992, plaintiff's husband submitted a KDOC "Request for Leave" slip. On the slip, he indicated that plaintiff was under a doctor's care, was unable to give a date of return to work and was "sick til further notice."

On March 20, 1992, Warden McKune sent plaintiff a letter notifying her of his intention to dismiss her from her position as a corrections officer at LCF. He cited K.S.A. 75–2949f(p) which permits dismissal of a permanent civil service employee who exhibits "personal conduct detrimental to state service which could cause undue disruption of work ... as may be determined by appointing authority." He stated that the basis for the dismissal was plaintiff's reluctance to provide requested information regarding her health and work status.

On March 27, 1992, Warden McKune sent plaintiff another letter, this time advising her that he intended to postpone the dismissal. He indicated that he felt perhaps his previous letters were not fully explicit as to the information he required of plaintiff. He was aware that plaintiff had an appointment with her doctor on March 30, 1992, and stated that he would postpone his decision regard-

ing her dismissal until after that appointment. He scheduled a meeting with plaintiff to discuss her status on April 2, 1992.

On April 2, 1992, the KDOC personnel office received a letter from plaintiff's psychologist, Swaran K. Jain, Ph.D. which stated that he had advised plaintiff not to return to work. On April 27, Warden McKune again wrote plaintiff and advised her that he intended to separate her employment at LCF without prejudice. Separation without prejudice is an internal mechanism used by the KDOC to denote that a former employee left in good standing, and, unlike a disciplinary dismissal for cause, the employee is eligible for rehire. Warden McKune this time cited K.S.A. 75–2949e(a)(1) which identifies "inability to perform the duties" as a reasonable basis for termination of a permanent civil service employee.

Plaintiff's position at LCF was filled by Lisa Meyerick, a married female with one child.

## III. *SUMMARY JUDGMENT STANDARD*

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *Langley v. Adams County, Colorado,* 987 F.2d 1473, 1476 (10th Cir.1993). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511; *Tersiner v. Union Pacific R.R.,* 740 F.Supp. 1519, 1522–23 (D.Kan. 1990). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

## IV. *DISCUSSION*

Defendant moved for summary judgment on all of plaintiff's claims. Plaintiff has since limited her claims to "those arising as a result of her medical condition as a result of pregnancy and the failure on the part of the employer to reasonably accommodate an impairment that substantially limits her life activities." Because plaintiff concedes that she is no longer pursuing claims for relief based on retaliation for the filing of complaints with the Equal Opportunity Employment Commission, and for any alleged violation of her rights under the Fourteenth Amendment, defendant's motion for summary judgment on these claims is granted. The court now turns to plaintiff's remaining claims of sex discrimination and failure to accommodate a disability or handicap.

### A. *Title VII and PDA Claim*

Plaintiff contends that she was unlawfully discriminated against on the basis of her pregnancy. It is her position that her health problems at or near the time of her termination of employment were medical conditions related to her pregnancy and that defendant unlawfully terminated her employment because of these conditions. While it is not completely clear, it appears that the medical conditions she alleges to have or have had at the time of her termination are those relating to her knee and ankle pain, i.e., conditions that prevented her from doing extensive or prolonged walking, standing or stair climbing at work, and perhaps mental

problems which are allegedly linked to or stem from these physical ones.[1]

■ Title VII declares it an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § .2000e–2(a)(1). In 1978, the Pregnancy Discrimination Act added section (k) to the definition section of Title VII. It states that the term "because of sex" includes "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The section further provides that women affected by "pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits." *Id.* The amendment was added to Title VII to prevent differential treatment of women based on the condition of pregnancy. *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.,* 956 F.2d 944, 947 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 60, 121 L.Ed.2d 28 (1992). It requires that an employer treat an employee who is temporarily unable to do her job because of a pregnancy-related condition in the same manner as the employer treats other temporarily disabled employees. *See* 29 C.F.R. § 1604 app. (1994).

■ Claims under the PDA are subject to the same analysis applicable to disparate treatment cases under Title VII. *Ackerman,* 956 F.2d at 947. Absent direct evidence of discrimination, the court applies the shifting burden of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff bears the initial burden of establishing a prima facie case of sex discrimination. She must show: (1) she was pregnant during the relevant time period or belongs to the protected group; (2) she was qualified and applied for a lighter duty assignment; (3) she was denied a lighter duty assignment or received other unfavorable treatment; and (4) the position was given to another who was no more qualified than she. *Eaton v. U.S. Postmaster General,* No. 90–1312–PFK, 1992 WL 363674, at *3 (D.Kan. Nov. 24, 1992) (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1093 n. 6, 67 L.Ed.2d 207 (1981)); *Day v. Eddy's Toyota of Wichita, Inc.,* No. 87–1532–C, 1989 WL 60306, at *4 (D.Kan. May 30, 1989).

■ Once plaintiff has met this burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the treatment of plaintiff. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The ultimate burden of persuasion remains with the plaintiff to show that unlawful discrimination was the true reason for the adverse action. *St Mary's Honor Ctr. v. Hicks,* — U.S. —, — – —, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993). Once the defendant has proffered a nondiscriminatory reason for the treatment of plaintiff, for purposes of meeting the burden at the summary judgment stage, plaintiff may show either that a discriminatory reason more likely motivated the defendant or that the defendant's reasons are not worthy of credence. *Durham v. Xerox Corp.,* 18 F.3d 836, 839–40 (10th Cir.1994) ("Although a prima facie case combined with disproof of the employer's explanations does not prove intentional discrimination as a matter of law, it may permit the factfinder to

---

1. One of the problems with which the court is faced here is plaintiff's failure to fully inform the court of her medical condition. There is evidence that plaintiff was pregnant and that Dr. Ashkar told her to take it easy during that time and for a short period of time after giving birth. There is evidence that plaintiff requested light duty and that she, and two of her doctors, believed she should walk less and climb stairs less at various periods of time between April of 1991 and April of 1992. Two medical records of visits plaintiff had with Dr. Christiano, which were produced by defendant, indicate that she had degenerative arthritis in her knees, ankles and elbows. There is also evidence that plaintiff was seeing a psychologist just before she was separated from her employment and that her problems at work were causing her problems in her personal life. Nowhere has plaintiff attempted to pull all of this evidence together, or to link seemingly unrelated problems, in order to present to the court a full picture of plaintiff's physical and mental health and its alleged deterioration from April, 1991 to April, 1992.

infer discrimination, and thus preclude summary judgment for the employer.").

The court finds that plaintiff has not met her burden to make a prima facie showing of discrimination based on her pregnancy. While plaintiff has not attempted to specifically set out in her brief or explain how she has, or can, establish a prima facie case, the court might arguably be able to find from the record as a whole that she meets elements two through four. The court cannot find, however, that she has shown that she was pregnant during the relevant time period, or that she otherwise belonged to the protected group at or near the time of her separation from employment.

Admittedly, plaintiff has shown that she was, at one time, pregnant. However, she was not pregnant at or near the time she left or was terminated from her employment. She was terminated almost a year after the birth of her child. Plaintiff's specific theory of relief is that she was terminated or forced to leave her job because of medical conditions related to her pregnancy. She argues that the failure to offer her light duty for pregnancy-related medical conditions for many months after giving birth, constitutes discrimination on the basis of her pregnancy. She seeks back pay and reinstatement as a result of this treatment. The court believes that in order to make a prima facie showing of discrimination on her theory of relief, plaintiff must do more than show she was, past tense, pregnant. She must at least make a prima facie showing that her medical conditions at or near the time of her termination were, in fact, related to her pregnancy. Plaintiff has not made such a showing.

Although plaintiff's attorney believes plaintiff's medical condition, at the time of her separation from employment, was related to her pregnancy, there is no evidence in the record to support this contention. Plaintiff has not testified, in her deposition or by affidavit, that her condition, roughly around the time of her last day of work (January of 1992), was related to her pregnancy. Her actual deposition testimony indicates, at best, that she does not know what specifically was the cause of her pain.[2] Nothing in her affidavit indicates that her problems related back to her pregnancy eight months before. At best, she had a condition which she first noticed during her pregnancy which became further aggravated over time. This alone is insufficient to show that she had a pregnancy-related medical condition long after giving birth.

None of plaintiff's personal physicians have linked her pain specifically to her pregnancy. Dr. Ashkar testified that his note of May 1991, requesting light duty for plaintiff, was intended to provide plaintiff with six weeks of light duty for the time period immediately following the birth of her child. There is no indication that he believed her "condition" would continue for any greater period of time, or that she would need to work less, as a result of her pregnancy, for eight months. The evidence is that plaintiff had a normal pregnancy, but that Dr. Ashkar believed that she, like many pregnant women, should reduce the amount of work she engaged in during or shortly after pregnancy. The evidence indicates that this "condition" was expected to dissipate about six weeks after plaintiff returned to work.

The next light duty slip in evidence is that of September 4, 1991, which states that plaintiff is not to do increased walking. There is no evidence that this was prescribed in relation to plaintiff's previous pregnancy. On February 13, 1992, Dr. Christiano states in a letter that plaintiff has degenerative arthritis in her knees, ankles and elbows. He states

---

2. Plaintiff testified in her deposition as follows:

A. After my youngest son was born, I was having increasing problems with my knees and my ankles. Now, prior to his birth, I had assumed that these problems were simply due to pregnancy, but then afterwards, I wasn't pregnant anymore, I was still having the problems, so I got the light duty slips. I went and saw a doctor, Dr. Christiano. I had light duty slips. As time progressed and they refused to accommodate me, things got worse and worse. As time progressed, ... I just became less and less able to do things. Again, specifically, I lost a lot of interest in doing anything much after the incident on January 2nd.

Q. Okay, so when do you think those problems started with your knees?

A. I can't say specifically when they started. I started noticing problems during my ... third pregnancy.

that "probably the prolonged walking and standing she does on her job is aggravating the arthritis." Once again, there is no evidence that this condition is in any way linked to her pregnancy over nine months before.[3]

In short, the court is simply left to speculate whether the problems plaintiff suffered from in January, February and March of 1992, whatever those problems may have been, were related to plaintiff's pregnancy months before. Although the burden to present a prima facie case is not an onerous one, speculation is not enough. Plaintiff has simply not met her burden to show she had a medical condition related to pregnancy for which she suffered disparate treatment during the months approaching her last day of work and her ultimate separation from employment.

■ In addition, even if plaintiff could show some nexus between her medical condition at or near the time of her termination and her pregnancy, her claim must, in any event, fail. Defendant has articulated a legitimate, nondiscriminatory basis for her dismissal, namely her inability to perform her duties and job abandonment. Plaintiff has presented no evidence from which the court could infer either that the KDOC's proffered reasons are unworthy of credence, or that they are a pretext for discrimination such that plaintiff can be considered to have met her burden on summary judgment. There is simply no evidence in the record from which a jury could reasonably infer that plaintiff was unlawfully discriminated against because of a pregnancy-related medical condition.

■ A plaintiff may demonstrate that his or her employer's reasons for the actions taken against him or her are pretextual by demonstrating that similarly-situated individuals, not part of plaintiff's group, were treated differently. *Ackerman,* 956 F.2d at 947–48 (citing *Burdine,* 450 U.S. at 258, 101 S.Ct. at 1096; *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). The PDA requires courts to examine whether an employer treats pregnancy or pregnancy-related conditions differently than or less favorably than

other medical conditions. *Id.* at 948. The court must compare plaintiff's treatment with that of other employees requesting accommodations under an employer's policies who were "not so affected but similar in ability or inability to do work." *Id.* at 948.

■ Plaintiff has not shown that any other employee requesting accommodations was treated more favorably than she. There is absolutely no evidence in the record that the KDOC treated pregnant workers any different from non-pregnant workers. The only evidence in the case is that some, but not all, of the posts to which plaintiff was assigned were not specifically designated as light duty assignments in descriptions of personnel policies. Plaintiff has not produced evidence that any specific employee complaining that he or she could not walk or stand for prolonged periods of time or climb stairs was treated any different than she. There is no specific evidence that the KDOC complied fully with other employee requests for light duty, but failed to do so for those employees who were, or were once, pregnant.

■ Plaintiff did, however, testify in her deposition that she believed she was subject to disparate terms and conditions of employment because, "[o]ther employees are given a light duty position when they request it, I was not." But she does not identify who these employees are or what the circumstances of their requests were. This testimony, standing alone, is insufficient to create a genuine factual dispute as to whether plaintiff was subjected to disparate treatment, and unlawful discrimination, on the basis of her pregnancy or alleged pregnancy-related condition. *See Candelaria v. E.G. & G. Energy Measurements, Inc.,* 33 F.3d 1259, 1261 (10th Cir.1994).

Even if the court found that plaintiff was singled out, that her light duty requests were ignored while others were not, there is no evidence that the reason for the treatment, direct or circumstantial, was plaintiff's pregnancy. There is simply no evidence in the case warranting an inference of discrimina-

---

**3.** There is also no evidence in the record that defendant believed plaintiff's condition related to her pregnancy. There is no evidence that plain-

tiff told the defendant that she was suffering from problems stemming from her pregnancy at or near the time of her discharge.

tion on the basis of plaintiff's pregnancy or her alleged pregnancy-related condition. While plaintiff may have evidence that she was 'discriminated against', her claim under Title VII and the PDA survives only if that discrimination was unlawfully motivated, i.e., that the treatment occurred because of her pregnancy. There is no such evidence, and, thus, plaintiff's claim must fail. Summary judgment is granted in favor of defendant on this claim.

### B. State Law Claims

Plaintiff's only remaining claims are those pursuant to the KAAD.[4] The court's subject matter jurisdiction over these state law claims is predicated on supplemental jurisdiction under 28 U.S.C. § 1367(a). There is no diversity of citizenship. Because the court has dismissed plaintiff's Title VII and Fourteenth Amendment claims, those claims over which it had original jurisdiction, the court must determine whether to exercise its supplemental jurisdiction over plaintiff's remaining state law claims.

 Whether to exercise supplemental jurisdiction is within the district court's sound discretion. The district court is expressly authorized to decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Discretion to try state law claims in the absence of any federal claims should only be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience and fairness would be served by retaining jurisdiction. *Thatcher Enterprises v. Cache Corp.*, 902 F.2d 1472, 1478 (10th Cir.1990). Generally, when federal claims are eliminated before trial, the balance of factors to be considered will point towards declining to exercise jurisdiction over the remaining state law claims. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher*, 902 F.2d at 1478.

 The court finds no compelling reason to exercise its supplemental jurisdiction and determines in the interest of comity and federalism that plaintiff's remaining state law claims be heard in state court.[5] *See Boone v. Carlsbad Bancorp., Inc.*, 972 F.2d 1545, 1559 (10th Cir.1992) (district court did not abuse its discretion in declining to exercise supplemental jurisdiction over pendant state law claims where it dismissed federal securities and RICO claims before trial); *Urban v. King*, 834 F.Supp. 1328, 1334 (D.Kan.1993) (court granted summary judgment on plaintiff's federal claims and declined to exercise jurisdiction over state law claims); *Dow v. Terramara, Inc.*, 835 F.Supp. 1299 (D.Kan. 1993) (same); *Smith v. Walsh*, 833 F.Supp. 844, 853 (W.D.Okla.1993) (same); *Taliaferro v. Voth*, 774 F.Supp. 1326, 1333 (D.Kan.1991) (same); *see also Bonger v. American Water Works*, 789 F.Supp. 1102, 1107–08 (D.Colo. 1992) (court declined to exercise jurisdiction over state statutory claim where it granted summary judgment in favor of defendant on plaintiff's Title VII claim). Plaintiff's claims pursuant to the KAAD are, therefore, dismissed without prejudice.

### V. CONCLUSION

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. # 42) is granted in part and denied in part.

---

4. The plaintiff is not making a claim under the Americans with Disabilities Act of 1990, (ADA). The ADA did not go into effect until July 26, 1992. Plaintiff cannot state a claim under this federal statute. *See Post v. Kansas Gas & Elec. Co.*, No. 92–1652–PFK, 1993 WL 246087, at *2 (D.Kan. June 14, 1993).

5. Moreover, defendant has raised the defense of Eleventh Amendment immunity. Plaintiff has made no showing that these state law claims are not barred by the Eleventh Amendment. The court may not have subject matter jurisdiction in any event over these claims. *See Mascheroni v. Bd. of Regents of Univ. of Calif.*, 28 F.3d 1554 (10th Cir.1994) (state law claims barred despite supplemental jurisdiction pursuant to Title VII); *Billings v. Wichita State Univ.*, 557 F.Supp. 1348 (D.Kan.1983) (finding plaintiff's claims under the KAAD barred by the Eleventh Amendment). Without resolving that issue here, plaintiff's apparent concession is a further reason to exercise our discretion in favor of dismissal.

**IT IS FURTHER ORDERED** that the remainder of plaintiff's claims are dismissed without prejudice.

**IT IS SO ORDERED.**