**Marvin D. BAKER, Plaintiff,**

v.

**The BOARD OF REGENTS OF the STATE OF KANSAS and University of Kansas Medical School–School of Medicine, Defendants.**

No. 88–4133–R.

United States District Court,
D. Kansas.

Sept. 1, 1989.

Anthony Clum, Robert E. Keeshan, Hamilton, Peterson, Tipton & Keeshan, Topeka, Kan., for plaintiff.

John C. McFadden, Steven L. Ruddick, Sp. Asst. Atty. Gen., University of Kansas Medical Center, Kansas City, Kan., Malcolm Burns, Lawrence, Kan., for defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon plaintiff's motion for a "temporary" injunction. The court heard evidence and argument on this motion on August 24, 1989. The court believes it is consistent with the intent of the parties and the type of hearing conducted upon plaintiff's motion to treat the motion as one for a preliminary injunction, rather than for a temporary restraining order.

Plaintiff's motion seeks an order directing defendants, the Board of Regents of

the State of Kansas and the University of Kansas Medical School (KUMS), to admit plaintiff as a first-year medical student pending the outcome of a trial in this case.

The long-standing test for granting a preliminary injunction is whether the movant can establish:

(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.

*Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980); see also *Tri–State Generation v. Shoshone River Power, Inc.,* 805 F.2d 351, 355 (10th Cir.1986).

Where a movant has prevailed on the other three factors, the Tenth Circuit has followed the Second Circuit's liberal definition of the probability of success element, i.e., whether the movant "has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus more deliberate investigation." *Lundgrin v. Claytor, supra.*

In deciding plaintiff's motion, the court shall focus upon the probability of success element of the test.

The amended complaint in this case asserts four claims. First, plaintiff, a white male, claims he was discriminated against because females and minority group members with lower grade point averages (GPAs) and lower scores on the medical school admissions test, MCAT, were admitted in 1984, 1985 and 1986, the three years plaintiff made unsuccessful applications to KUMS. Plaintiff alleges this is a violation of the Fourteenth Amendment to the United States Constitution, Section 1 of the Bill of Rights to the State of Kansas Constitution, Title VII of the Civil Rights Act of 1964 and Section 1981 of Title 42 of the United States Code.

Plaintiff's second claim asserts a cause of action under Title VI of the Civil Rights Act of 1964 for racial discrimination.

Plaintiff's third claim asserts that defendants' reliance upon interviews as part of the admissions process is arbitrary and capricious and denied plaintiff due process of law guaranteed by the Fifth and "Eleventh" Amendments to the United States Constitution.

Plaintiff's final claim is that defendants have refused to provide plaintiff records relevant to the denial of admission to KUMS in alleged violation of state law, K.S.A. 45–215 *et seq.*

It should be noted that plaintiff has filed a motion to amend his complaint to add claims under 42 U.S.C. § 1983 and 29 U.S.C. § 794. Plaintiff also seeks to add two individuals as defendants. We shall not rule upon this motion in this order, but do not believe the motion, if granted, would affect the merits of the motion for injunctive relief.

The following facts supply the basis for plaintiff's claims. Plaintiff is a Kansas resident. Kansas residents receive preference in the admissions process to KUMS, the only medical school in Kansas. He first applied for admission to KUMS in 1984. Plaintiff graduated from Kansas University in 1984 with a cumulative GPA of 3.54. Plaintiff had a 3.64 GPA in biology, chemistry, physics and mathematics. Admissions to KUMS are based upon four criteria: GPA, MCAT, premedical advisors recommendation and interviews. KUMS combines GPA and MCAT scores to develop one score. Plaintiff's combined score in 1984 was 587. This score was close to the average score of students admitted in 1984. Of the 192 students admitted in 1984, 63 had lower combined scores than plaintiff. But, plaintiff received an unsatisfactory interview committee score in 1984.

Plaintiff retook the MCAT in 1985 and improved his score so that his combined GPA/MCAT score was 625. This total was above the average total score of students admitted to KUMS in 1985. Plaintiff was not admitted, however.

Plaintiff applied again in 1986. Once again, his combined GPA/MCAT score was above average for persons admitted to KUMS that year. One hundred three applicants with lower combined scores were accepted to KUMS in 1986. Plaintiff had the highest combined score for any Kansas resident not admitted in 1986. There is testimony that based solely upon plaintiff's objective scores, he would have had a 95% chance of being admitted to KUMS. Plaintiff was recommended for admission by the Chairman of the Department of Anatomy at KUMS and by other faculty members.

Plaintiff did not apply to KUMS in 1987, 1988 or 1989. To make application after 1987, plaintiff would have had to retake the MCAT. Plaintiff did apply to other medical schools in 1985 and 1986, but was not accepted.

Of the 175 students admitted to KUMS in 1986, 22 were nonwhite, by self-description. In 1985, 19 of 200 students were nonwhite. In 1984, 12 of 192 new students were nonwhite. It appears that roughly half of the nonwhite admissions in these years were persons of oriental ancestry. The overall GPA of nonwhite students entering KUMS in 1984 was 3.52. In 1985, the number was 3.37.

KUMS has an affirmative action director who encourages minorities underrepresented in the medical profession and economically disadvantaged persons to apply for admission. Plaintiff might qualify as economically disadvantaged, but there is no evidence that he was aided by affirmative action. To the contrary, plaintiff asserts discrimination because of his status as a white male. There are no quotas for the admission of minority students, and the director of the affirmative action program testified that he has had no role in the admissions process. This testimony is somewhat contradicted by the deposition testimony of Dr. Stanley Nelson, who indicated a "minority director" spoke for minority applicants to KUMS. No evidence of a history of discrimination at KUMS has been presented to warrant any kind of racial preference in the admissions process.

It appears admitted that plaintiff was denied admission on the basis of his performance in the interviews for admission. All applicants from Kansas are granted an interview. The interview is conducted by four people. Usually, three applicants are interviewed at once, although at one of plaintiff's interviews only two applicants were interviewed. The interviews last approximately one hour. The interview panels are made up of one clinician, a basic scientist, a practicing physician, and a lay citizen. There are six panels. The members of the panels are changed each year.

During his interviews, plaintiff was questioned concerning abortion, religion, family history and financial need. Plaintiff felt the questions were inappropriate. Plaintiff's experience in the interviews indicated that no standard procedure governed the format or substance of the questions.

KUMS has not performed a study to determine if interviews help select successful medical students. A study has been conducted which indicates that GPA and MCAT scores can predict success in passing courses at KUMS.

Plaintiff has cited several articles from academic journals which describe studies finding no correlation between interviews for medical school and success in coursework. In other words, students selected without interviews are just as successful academically as students selected with interviews. Plaintiff has also presented the deposition testimony of an expert who indicated that his studies are beginning to show that students selected by interviews do not perform better in residency.

*Probability of Success on the Merits*

Defendants have filed a motion to dismiss raising many issues which should be considered at this point. First, it should be noted that plaintiff cannot bring an action under the Fifth or Fourteenth Amendments to the United States Constitution; he is limited to bringing an action pursuant to federal statutes enforcing the Constitution. *Phelps v. Wichita Eagle–Beacon*, 632 F.Supp. 1164 (D.Kan.1986); *Lee v. Wyandotte County, Kansas*, 586 F.Supp. 236 (D.Kan.1984). Nor is relief available

under Title VII of the Civil Rights Act of 1964. This statute is reserved for employment discrimination. 42 U.S.C. § 2000e.

■ Defendants have raised the defense of the Eleventh Amendment against this lawsuit. Plaintiff has sued two state instrumentalities that share in the state's immunity from suit in federal court under the Eleventh Amendment. See *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Clay v. Texas Women's University*, 728 F.2d 714 (5th Cir. 1984); *Billings v. Wichita State University*, 557 F.Supp. 1348, 1350 (D.Kan.1983). This immunity extends to lawsuits for injunctive or prospective relief. *Alabama v. Pugh, supra; Billings v. Wichita State University, supra*. Lawsuits under 42 U.S.C. §§ 1981 and 1983 are not exempt from the Eleventh Amendment bar. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Freeman v. Michigan Dept. of State*, 808 F.2d 1174 (6th Cir.1987). The Eleventh Amendment also bars lawsuits in federal court for injunctive relief under state law. *Pennhurst State School v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Title VII of the Civil Rights Act of 1964, pursuant to Congressional intent, can be applied directly against a state, regardless of the Eleventh Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Therefore, we assume that a lawsuit under Title VI may also proceed directly against a state or an instrumentality of a state. In sum, any action by plaintiff under the amended complaint is barred by the Eleventh Amendment except for plaintiff's claim under Title VI of the Civil Rights Act.

■ Title VI bars racial discrimination by recipients of federal funds. Defendant argues that a private citizen cannot sue under Title VI; that the statute can only be enforced by the government. We disagree. We believe it is proper to imply a private cause of action under Title VI, at least when injunctive relief is requested. *Guardians Association v. Civil Service Commission*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983).

■ Defendants further argue, though, that any relief under Title VI is barred by the statute of limitations. Of course, there is no federal statute of limitations for an implied cause of action. So, defendant suggests that the two-year state law statute of limitations, which is now routinely borrowed for civil rights actions under 42 U.S.C. §§ 1981 and 1983, be applied to this case. This is significant because it is agreed that plaintiff last learned that he was rejected for admission at KUMS about the end of January 1986. Plaintiff filed this lawsuit on June 14, 1988, more than two years later.

The Tenth Circuit has held that all § 1983 claims for violation of civil rights should be characterized as actions for injury to personal rights. *Garcia v. Wilson*, 731 F.2d 640 (10th Cir.) (en banc) *aff'd*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). It is now well-established that the appropriate state statute of limitations to apply to such claims is the two-year period set out in K.S.A. 60–513(a)(4). *Pike v. City of Mission*, 731 F.2d 655 (10th Cir.1984). The Tenth Circuit has indicated that the same analysis should apply to a race claim brought under 42 U.S.C. § 1981. *E.E.O.C. v. Gaddis*, 733 F.2d 1373, 1377 (10th Cir. 1984).

Most courts have held that a state statute of limitations should be borrowed to apply to a cause of action under Title VI or analogous statutes. *Andrews v. Consolidated Rail Corp.*, 831 F.2d 678, 683–84 (7th Cir.1987) (Indiana state statute of limitations for actions relating to employment applied to action under Rehabilitation Act, 29 U.S.C. § 794); *Chambers v. Omaha Public School Distr.*, 536 F.2d 222 (8th Cir.1976) (state statute of limitations for actions brought under federal statute covers claims under §§ 1981, 1983 and Title VI); *Lewis v. Russe*, 713 F.Supp. 1227 (N.D.Ill.1989) (Illinois statute of limitations for civil actions not otherwise covered by a statute of limitations applied to a Title VI action); *Brown v. City of Salem*, 40 E.P.D. Para. 36,348, 1986 WL 11750 (D.Mass.1986) (state statute of limitations for personal injury actions applied to §§ 1981, 1983 and

Title VI claims); *Champion v. Georgia Bureau of Investigation,* 568 F.Supp. 712 (N.D.Ga.1983) (Georgia 180–day statute of limitations for unlawful employment practices applied to Title VI action); *Barcia v. Sitkin,* 89 F.R.D. 382 (S.D.N.Y.1981) (New York statute of limitations for actions based on statute applied to § 1983 and Title VI claims); *Vulcan Society v. Fire Department,* 82 F.R.D. 379 (S.D.N.Y.1979) (same); but see, *Bougher v. University of Pittsburgh,* 882 F.2d 74 (3d Cir.1989) (180–day period for filing a complaint under Title VI regulations—34 C.F.R. § 100.7—applied to claim brought under Title IX).

Based on the above authority, the court believes a state statute of limitations should be applied to plaintiff's Title VI claim. Because the Tenth Circuit has held that race discrimination claims brought under § 1981 or § 1983 should be governed by the statute of limitations for personal injuries, the court knows no reason why the same statute should not be applied to a race discrimination claim which could be prosecuted under § 1981 or § 1983, but is instead brought under Title VI. Therefore, we hold that the two-year statute of limitations for personal injury actions in Kansas, K.S.A. 60–513(a)(4), should apply to plaintiff's Title VI claim. See generally, *Chardon v. Fumero Soto,* 462 U.S. 650, 667, 103 S.Ct. 2611, 2621–2622, 77 L.Ed.2d 74 (1983) (Rehnquist, J., dissenting) ("Few areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations.").

■ Federal law determines when a cause of action accrues under a federal statute, even if a state statute of limitations is applied under the same statute. *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir.1987) (overruling *Clulow v. Oklahoma,* 700 F.2d 1291 (10th Cir.1983) and *DeVargas v. Montoya,* 796 F.2d 1245 (10th Cir. 1986)). A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Kline v. North Texas State University,* 782 F.2d 1229, 1232 (5th Cir.1986). Accrual is not dependent upon when the plaintiff knows or should know that the injury constitutes a legal wrong. *Keystone Ins. Co. v. Houghton,* 863 F.2d 1125, 1127 (3d Cir.1988). Thus, in an employment discrimination matter, the limitations period normally commences when the employer's decision is made. *Delaware State College v. Ricks,* 449 U.S. 250, 261, 101 S.Ct. 498, 505–506, 66 L.Ed.2d 431 (1980). Here, we believe the limitations period commenced each time plaintiff was rejected for admission to KUMS.

■ While the accrual of a federal cause of action is a matter of federal law, state law on tolling of a statute of limitations must be followed if a state statute of limitations is being borrowed, unless the tolling rules are inconsistent with federal law or with the policy which the federal law seeks to implement. *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *Pike v. City of Mission,* 731 F.2d 655, 658 (10th Cir.1984). Plaintiff has the burden of establishing a basis for equitable tolling. *Byars v. Follmer Trucking Co.,* 763 F.2d 599, 600–01 (3d Cir.1985) (per curiam); see also, *Clulow v. State of Oklahoma, supra,* 700 F.2d at 1301.

■ "Under Kansas law, fraudulent concealment does not toll the statute of limitations unless the plaintiff's claim for relief is grounded on fraud." *Pike v. City of Mission, supra,* (citing *McCoy v. Wesley Hospital & Nurse Training School,* 188 Kan. 325, 362 P.2d 841, 847 (1961)). Plaintiff has suggested that he was excusably ignorant of the grounds which would support a discrimination claim for some period of time and the defendants wrongfully concealed information which would have made plaintiff aware that he had been discriminated against. However, since fraud is not an element of plaintiff's claim for relief under Title VI, it would not appear that plaintiff can establish grounds for equitable tolling of the statute of limitations under state law.

It is arguable that a more liberal policy of tolling should be applied because limiting acknowledgement of fraudulent concealment as grounds for tolling to fraud

actions is contrary to federal policy. Certainly, many federal cases have applied or acknowledged the possibility of applying the doctrines of equitable tolling or equitable estoppel in discrimination cases where it is established that a plaintiff was excusably ignorant of discrimination against him, or that a defendant acted so that a plaintiff was induced to refrain from exercising his rights. E.g., *English v. Pabst Brewing Co.*, 828 F.2d 1047 (4th Cir.1987) *cert. denied*, — U.S. —, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988); *Morse v. Daily Press, Inc.*, 826 F.2d 1351, 1352–53 (4th Cir.1987); *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 532 (5th Cir. 1986); *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 (3d Cir.1983); *Wolfolk v. Rivera*, 729 F.2d 1114 (7th Cir.1984); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir.1975); *Jones v. Hodel*, 711 F.Supp. 1048, 1051 (D.Utah 1989). It could also be argued that, contrary to *Pike v. City of Mission*, Kansas law supports the tolling of limitations period upon a showing of affirmative inducement to delay or fraudulent concealment in cases where fraud is not part of the cause of action. See *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936 (1980) (in negligence action court discusses these grounds for tolling the statute of limitations, although it finds that the statute should not be tolled). It must be noted, however, that the Tenth Circuit appears to take a conservative approach when applying the federal doctrine of equitable tolling. See *Johnson v. U.S. Postal Service*, 861 F.2d 1475, 1481 (10th Cir.1988) ("Thus, in this circuit, a Title VII time limit will be tolled *only* if there has been 'active deception.' ").

Even if the law in the Circuit permits the tolling of the statute of limitations for excusable ignorance or affirmative misconduct, the court does not believe a satisfactory showing of either tolling grounds has been made to demonstrate a probability of success on the merits. Plaintiff has presented evidence that he has had difficulty obtaining records from defendants. But, the court is not yet persuaded that this constitutes affirmative misconduct, active deception, or inducement to delay bringing a lawsuit. Plaintiff knew or reasonably should have known in January 1986 that he had an above average GPA/MCAT score for applicants to KUMS. He knew, from speaking to KUMS officials after each rejection, that subjective factors were keeping him out. He could logically assume that some of the people with lower scores who were accepted into KUMS were minorities. He knew or could have known of the affirmative action policy at KUMS. He was familiar with people involved in the admissions process, including people on the selection panel. Given these factors, it does not appear probable that plaintiff can demonstrate excusable ignorance or other grounds for tolling the statute of limitations. See generally, *Janowiak v. City of South Bend*, 750 F.2d 557, 560 (7th Cir. 1984) (white plaintiff familiar with test ranking, affirmative action policy, and decision to hire minorities for four of five positions could not have tolled running of limitations period if not for evidence of later assurance by defendant that plaintiff would be hired); *Bickham v. Miller*, 584 F.2d 736 (5th Cir.1978) (plaintiff who was suing for loss of promotion should have investigated cause of her nonpromotion at the time she learned her application had been denied).

■ Assuming that plaintiff surmounted the statute of limitations defense, the court does not believe plaintiff has demonstrated that it is probable that he was discriminated against on the basis of race. Plaintiff has proven that the average scores of minorities admitted to KUMS were lower than the scores of white persons admitted to KUMS. Plaintiff has also proven that nonresident minorities who applied for admission were granted interviews when nonresident whites with similar test scores would not have been granted an interview. Plaintiff has further shown that the selection panel was aware of the minority status of applicants and that minorities underrepresented in the profession had a proponent (the affirmative action director) whose input and impact upon the process is vaguely defined. Additionally,

Dr. Robert Klein stated in his deposition that race was a factor in the selection of medical students in 1986.

However, Dr. Klein also stated that if Marvin Baker had been black, Dr. Klein doubted that he would have been admitted with his interview scores. It is obvious that many white persons with lower scores than plaintiff were admitted to KUMS. Plaintiff has not demonstrated that the interview process favored minority applicants over white applicants. Indeed, the opposite might be the case since, as a general matter, there is a potential for interviewers to favor persons with backgrounds similar to their own, according to plaintiff's expert witness. Thus, if plaintiff was denied admission on the basis of his interviews—and this is suggested by the most convincing evidence submitted so far—there is little linking this to plaintiff's race. Of course, plaintiff's race could have been a factor in addition to his interview performance. However, Dr. Klein's testimony is that while race was generally a factor, he doubted that plaintiff would have been admitted, because of his interviews, regardless of plaintiff's race.

In sum, at this point it is doubtful, not probable, that plaintiff can demonstrate that he was discriminated against on the basis of race.

*Irreparable harm*

Nor has plaintiff made a strong showing of irreparable harm. Plaintiff contends that his skills are eroding and his knowledge is less current as time passes. But plaintiff, to this court's knowledge, has not made an application to any medical school in the last three years. Moreover, plaintiff waited for more than a year after filing this case to file the motion for injunctive relief currently before the court. These facts suggest that plaintiff is not suffering irreparable injury. See *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602 (S.D.N.Y.1979). Plaintiff obviously believes he is still qualified to enter KUMS. We have no reason to believe he will become unqualified by reason of the passage of time at the conclusion of this case. Finally, assuming a private cause of action

for damages exists under Title VI, an issue we do not decide here, the loss of income is capable of remuneration.

*Balance of harm*

We believe plaintiff has demonstrated that there is a greater risk of harm to him if the injunction is not granted than to defendants if the injunction is granted.

*Public interest*

We have no reason to believe the injunction requested by plaintiff would be contrary to the public interest.

CONCLUSION

With this order, we are not ruling upon the motion to dismiss filed by defendants. However, the motion raises issues which create genuine and serious doubt as to whether plaintiff will succeed on the merits of this case. Furthermore, plaintiff has not made a sufficiently strong showing that he can ultimately succeed upon his claim of race discrimination, or that he will suffer irreparably if defendants are not required to accept him as a medical student at KUMS. Accordingly, plaintiff's motion for a preliminary injunction is denied.

IT IS SO ORDERED.