Richard A. DELATORRE, Plaintiff,

v.

William V. MINNER, in his individual capacity, Defendant.

No. 01–4065–SAC.

United States District Court, D. Kansas.

Dec. 13, 2002.

Pantaleon Florez, Jr., Topeka, KS, for plaintiff.

M.J. Willoughby, Scott B. Poor, Office of Attorney General, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on the defendant William Minner's motion to dismiss pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure. (Dk.19). This is round two in the defendant's effort towards a a pretrial dismissal of this employment discrimination case brought under the civil rights statutes of 42 U.S.C. §§ 1981 and 1983. As a result of the defendant's first motion, the court dismissed the plaintiff's § 1983 claim based on the right to be free from retaliatory conduct, denied the motion without prejudice on the defense of qualified immunity and on the challenges to the sufficiency of the complaint, and denied the defendant's other legal challenges. (Dk.15). The court also directed the plaintiff to file an amended complaint addressing the pleading deficiencies discussed in that order. The plaintiff has filed an amended complaint (Dk.18), and the defendant again moves for dismissal for failure to state a claim upon which relief can be granted, (Dk.19).

## AMENDED COMPLAINT

The plaintiff is of Mexican origin and ancestry, and he was employed as a special investigator with the Kansas Humans Rights Commission ("KHRC") from 1992 until his termination in July of 1999. The defendant is African American, and he served as the executive director of the KHRC during the relevant time periods. The plaintiff alleges he was denied benefits awarded to less deserving employees who were African American. Specifically, he was one of the top three producers in 1998 and 1999, and the defendant awarded trips to the national human rights conventions to lower-producing African American employees rather than the plaintiff. The plaintiff alleges he received more severe discipline than that given to employees who were African American. Specifically, as a result of unauthorized long distance telephone calls, the plaintiff was placed on strict probation for ninety days, restricted to office work, required to report to work during specified hours and restricted in his use of the telephone, but Robert Davis, an African American employee, did not receive as severe discipline for his unauthorized long distance telephone calls. The plaintiff also alleges that beginning in 1998 and continuing up to his termination, the defendant had directed the plaintiff not to have any contact with any KHRC commissioner especially those of Hispanic ancestry. The plaintiff further alleges the defendant ignored the regular chain of supervisory authority and directly supervised an African American investigator. Besides pleading that each of these actions denied him of equal rights and protection under the law, the plaintiff asserts the same along with other some other generally alleged actions resulted in his constructive discharge in July 1999.

In his amended complaint, the plaintiff also includes the following conclusory allegations:

19. From May 1998 through Plaintiff's constructive discharge in July 1999, Defendant subjected Plaintiff to disparate terms and conditions of employment on a continuous basis because of his Mexican ancestry. As noted above Plaintiff was not allowed the benefits earned because of his performance, was subjected to substantially more severe disciplinary action, was denied the right to speak to other Mexican or Hispanic employees of the KHRC including commissioners, was denied the special consideration afforded to the African American investigator directly supervised by the Defendant, was denied the opportunity to perform my

duties in accord with the law, was ordered to change reports and findings on cases at the direction of the Defendant, and African American employees were given credit for completed investigations by Defendant in spite of the fact that they did not conduct investigations.

21. From at least May 1998 and continuing throughout the balance of Plaintiff's employment the above identified disparate treatment of Plaintiff by Defendant created a hostile work environment for Plaintiff because of his Mexican ancestry and origin.

22. Plaintiff was continuously subjected to the work environment heavily charged with racial bias and disparate treatment both directly towards him and in his presence. The hostile work environment was created by the Defendant, with the intent to cause Plaintiff to terminate employment.

23. Plaintiff alleges he was constructively discharged effective July 30, 1999 in that, the adverse disparate treatment he was subjected to over an extended period of time created intolerable working conditions such as that no reasonable person would be expected to continue in their employment.

24. From at least May 1998 until at least July 30, 1999 Defendant by engaging in the above identified unlawful racial discrimination created barriers to advancement and continued employment of Plaintiff by failing to equalize, privileges and other terms and conditions of employment for Plaintiff, as contrasted with similarly situated African American employees.

(Dk.18).[1] In relevant part, the plaintiff seeks to recover back pay and compensatory damages for both pecuniary and nonpecuniary losses.

## RULE 12(B)(6) STANDARDS

The court incorporates by reference those standards set out in its prior order. (Dk.15). From that prior order, the court highlights that dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). All well-pleaded factual allegations in the complaint must be accepted as true, *see Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992), and viewed in the light most favorable to the nonmoving party, *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472 (10th Cir.1990). The court, however, is not to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted).

## ARGUMENTS

The defendant Minner seeks dismissal on several bases. First, the plaintiff's amended complaint fails to cure the pleading deficiencies earlier found by the court. Second, the plaintiff's claims as alleged are barred by the applicable statute of limitations. Third, the defendant is entitled to qualified immunity on the plaintiff's claims. Finally, the plaintiff's allegations fail to state a claim upon which relief can be granted under 42 U.S.C. § 1981. In response, the plaintiff submits his allegations are sufficient to state a claim. He accepts the applicable limitations period as two

---

1. The amended complaint mistakenly numbers two paragraphs as 18 and fails to number any paragraph as 20.

years, but he points to his allegations that he sought equal treatment during the last fifteen months of his employment and was denied the same continuously and that the same acts of disparate treatment culminated in his constructive discharge in July 1999. The plaintiff contends the defendant's discriminatory actions violated clearly established law and the complaint alleges specific claims of constitutional violations. Finally, the plaintiff argues the district court should not change its mind about the proper interpretation and application of 42 U.S.C. § 1981(c) to a state employee sued in his individual capacity.

## SUFFICIENCY OF FACTUAL ALLEGATIONS

In its prior order, the court offered the following in part as the law governing this issue:

> Once a defendant asserts a defense of qualified immunity, the "court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (citations omitted). The issue of "whether the plaintiff has asserted a violation of a constitutional right at all" is a "purely legal question." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277, (1991)....
>
> "In the context of a 12(b)(6) motion to dismiss, ... the qualified immunity defense is limited to the pleadings," and "the allegations in the complaint and any reasonable inferences ... from them" are drawn in favor of the plaintiff. *Dill v. City of Edmond, Okl.*, 155 F.3d 1193, 1203–04 (10th Cir.1998). In the past, the Tenth Circuit has required a plaintiff to meet a heightened pleading standard upon a defendant's assertion of qualified immunity. *Currier v. Doran*,

242 F.3d 905, 911 (10th Cir.), *cert. denied*, 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421 (2000). The Tenth Circuit in *Currier* held, however, that this heightened pleading requirement does not survive the Supreme Court's opinion in *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). 242 F.3d at 916. While accepting that its review is now limited to the customary 12(b)(6) standards, the Tenth Circuit observed that the Supreme Court recognized a trial judge's discretion to "require a plaintiff to plead 'specific, non-conclusory factual allegations' to survive a prediscovery motion for dismissal." 242 F.3d at 916 (quoting *Crawford–El*, 523 U.S. at 598, 118 S.Ct. 1584). When faced with this requirement, the plaintiff "may amend his complaint to include additional 'specific, non-conclusory allegations of fact' sufficient to allow the district court to determine whether Defendants are entitled to qualified immunity." *Dill v. City of Edmond, Okl.*, 155 F.3d at 1204.

The plaintiff's complaint lacks well-pleaded factual allegations and relies principally on allegations of conclusions or opinions. The complaint does not plainly and directly identify the constitutional right allegedly violated. It does allege "unlawful racial discrimination" in the terms and conditions of employment. "Racial and national origin discrimination can violate the Fourteenth Amendment right to equal protection of the law and state a cause of action under 42 U.S.C. § 1983." *Ramirez v. Department of Corrections, Colo.*, 222 F.3d 1238, 1243 (10th Cir.2000) (citing *Poolaw v. City of Anadarko, Okla.*, 660 F.2d 459, 462 (10th Cir.1981)). The most specific allegation in the complaint is that the defendant "created barriers to advancement and continued employment of Plaintiff by failing to equalize, privileges

and other terms and conditions of employment for Plaintiff, as contrasted with similarly situated African American employees." (Dk.1, ¶ 16). Like the other allegations in the plaintiff's complaint, this is little more than a bare conclusion or opinion. It cannot withstand a qualified immunity defense without supporting allegations of fact. In his response, the plaintiff seeks leave to file an amended pleading to supply the factual detail needed to support his claim. The court gives the plaintiff twenty days from the filing date of this order to file an amended complaint that includes specific, non-conclusory, factual allegations in support of his equal protection claim. The court denies the defendant's motion for dismissal on qualified immunity grounds without prejudice to a similar motion being advanced after the plaintiff's filing of an amended complaint. (Dk.15, pp. 6–10) (footnote omitted).

■ In response to the court's direction, the plaintiff filed an amended complaint that repeats many of the same allegations already found by the court to be objectionable as bare conclusions and opinion. The allegations found in a portion of paragraph nineteen[2] and in all the remaining paragraphs through paragraph twenty-four of the amended complaint are conclusory and devoid of any factual detail. Because the plaintiff has failed to follow the court's order in this regard, the court summarily dismisses those general allegations as failing to state a claim against a state official asserting the defense of qualified immunity. The court realizes that the plaintiff may have intended one or more of those paragraphs to simply incorporate his prior factual allegations and to place them under the referenced legal theory. The court's ruling here is not concerned with the plaintiff's attempt to identify the legal theories of disparate treatment, hostile work environment, and constructive discharge but with the plaintiff's effort to leave these claims so open-ended as to include other discriminatory events or actions not specifically alleged in the amended complaint. The court directed the plaintiff to come forth with specific factual allegations in order to decide whether a constitutional violation has been alleged. Referencing a legal theory by name and generally alleging some of its elements outside any specific factual context or without any detail will not suffice. Consequently, the court will look only to the specific factual allegations found in the amended complaint[3] in deciding whether the plaintiff has stated a constitutional violation upon which relief can be granted.

## STATUTE OF LIMITATIONS

■ State statutes of limitations applicable to general personal injury claims supply the limitations periods for § 1983 claims, *see Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), and *Arnold v. Duchesne County,* 26 F.3d 982, 985 (10th Cir.1994), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 626 (1995), and for § 1981 claims, *see Roberts v. Roadway Exp., Inc.,* 149 F.3d 1098, 1110–11 (10th Cir.1998), and *Reynolds v.*

---

**2.** The court is referencing the last four lines of ¶ 19, in particular: "was denied the opportunity to perform my duties in accord with the law, was ordered to change reports and findings on cases at the direction of Defendant, and African American employees were given credit for completed investigations by Defendant in spite of the fact that they did not conduct investigations."

**3.** The court considers the plaintiff to have alleged with some specificity four instances of discriminatory treatment: the denial of convention trips in 1998 and 1999, disparate discipline for unauthorized telephone calls, denial of access to KHRC commissioners, and disparate supervision of investigators.

*School Dist. No. 1, Denver Colo.*, 69 F.3d 1523, 1532 (10th Cir.1995). Thus, any action brought under 42 U.S.C. §§ 1981 or 1983 in Kansas is subject to a two-year statute of limitation. *Baker v. Board of Regents of State of Kan.*, 991 F.2d 628, 630–31 (10th Cir.1993); *see Garcia v. University of Kansas*, 702 F.2d 849, 851 (10th Cir.1983), *overruled in part on other grounds*, 731 F.2d 640 (10th Cir.1984), *aff'd*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

■■■ Federal courts, however, look to federal law in deciding when a claim accrues. *See Smith v. City of Enid ex rel. Enid City Com'n*, 149 F.3d 1151, 1154 (10th Cir.1998). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker*, 991 F.2d at 632. Accrual does not depend "upon when the plaintiff knows or should know that the injury constitutes a legal wrong." *Baker v. Board of Regents of State of Kan.*, 721 F.Supp. 270, 275 (D.Kan.1989), *aff'd*, 991 F.2d 628 (10th Cir.1993). Thus, the claims of a civil rights plaintiff accrue when the plaintiff knows or should know that his or her constitutional rights have been violated. *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557 (10th Cir.1999).

"In employment discrimination cases, the injury arises when the adverse employment action is communicated to the plaintiff, not when the ill effects of the decision are felt by the plaintiff." *Myers v. Colgate–Palmolive Co.*, 102 F.Supp.2d 1208, 1225 (D.Kan.2000) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 260, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)), *aff'd*, 26 Fed.Appx. 855, 2002 WL 27536 (10th Cir. 2002). In most instances, the civil rights claim will accrue when "the alleged unlawful employment practice occurs." *Martin v. Southwestern Virginia Gas Co.*, 135 F.3d 307, 310 (4th Cir.1998) (citing in part *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam) (§ 1983 action); *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (Title VII and § 1981 action)). In determining the accrual date for an employment discrimination claim, the "proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Delaware State College*, 449 U.S. at 258, 101 S.Ct. 498. Nor is the focus on when the defendant has notice or knowledge of the discriminatory motive or animus behind the adverse employment action. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558–59 (10th Cir.1994); *Gonzalez Garcia v. Puerto Rico Elec. Power Auth.*, 214 F.Supp.2d 194, 200 (D.Puerto Rico 2002). Nor is it necessary that the plaintiff know all of the facts or evidence supporting her claim for the cause of action to accrue. *Baker v. Board of Regents of State of Kan.*, 991 F.2d at 632. Thus, it is generally true that these claims will accrue when the plaintiff employee is notified of the adverse employment decision or action. *Smith v. City of Enid*, 149 F.3d at 1154.

■■■ To be within the limitations period, the plaintiff must allege he was notified of the defendant's unlawful discriminatory acts no sooner than June 1, 1999. With regard to his claim of disparate terms and conditions, the plaintiff knew well before June 1, 1999, the following, (1) that he had been denied a trip to the 1998 human rights convention which had been awarded to other employees; (2) that the defendant had decided to discipline him in the manner spelled out in the written memorandum dated February 16, 1999; and (3) that the defendant had instructed him in 1998 not to contact directly any KHRC commissioner. As apparent from the face of the plaintiff's complaint, these claims of disparate treatment are time-barred.

The plaintiff does not allege any date for when he learned that the defendant was giving preferential direct supervision to an African American investigator. The defendant represents in his motion that "if this occurred at all, it occurred only once in 1997." (Dk.20, p. 13). The plaintiff does not respond directly either to this representation or to the defendant's challenge to the timeliness of this disparate condition claim. The plaintiff does not attempt to explain his failure to allege a date for this act when he has alleged dates for most of the other acts. Nor does the plaintiff represent that the discriminatory act occurred within the limitation period. Because the plaintiff has not alleged or even referenced a date, nor offered to amend his complaint so as to allege a date in his complaint, nor disputed the defendant's argument and representation that this claim is untimely, the court treats the matter as uncontested and concludes this claim is also time-barred.

The plaintiff likewise does not allege the date when he learned of the defendant's decision not to award him the trip to the 1999 human rights convention. The defendant in his motion points out this deficiency and further argues that the plaintiff left his employment in July of 1999 and could not have represented the state agency at this convention in October of 1999. The plaintiff does not attempt to explain his failure to allege a date for this act, does not represent that the discriminatory act occurred within the limitation period, does not offer to amend his complaint and allege this date, and does not otherwise contest or dispute that the convention occurred after his termination. The court also treats as uncontested the defendant's contention that this claim is untimely as alleged.

The plaintiff points to his allegation in ¶ 18 [4] that he requested equal terms and conditions throughout the last fifteen months of his employment. This paragraph is conclusory and fails to allege any specific unlawful adverse employment action. At best, it can be read as incorporating the specific adverse employment actions previously alleged and adding the plaintiff's repeated request to the defendant to change or end the disparate treatment. Such an allegation, however, does not avert the limitations bar. " 'An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.' " *Martin v. Southwestern Virginia Gas Co.,* 135 F.3d at 310 (quoting *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 296 (7th Cir.1995)).

 In its prior order, the court observed that the plaintiff's hostile work environment claim was "deficient in pleading facts in support of" it. (Dk.75, p. 15). In his amended complaint, the plaintiff did not modify his pleading of this claim expect to reference his previous allegations of disparate treatment, all of which this court has concluded are outside the limitations period based on the allegations in the plaintiff's complaint or his failure to contest the defendant's motion. A hostile work environment theory is available when the discriminatory harassment is "sufficiently severe or pervasive to alter the conditions [of the victim's] employment and create an abusive working environment." *Turnbull v. Topeka State Hosp.,* 255 F.3d 1238, 1243 (10th Cir.2001) (quotation and citations omitted), *cert. denied,* 535 U.S. 970, 122 S.Ct. 1435, 152 L.Ed.2d 380 (2002). The Supreme Court recently held that the "very nature" of a hostile

---

4. The plaintiff refers to ¶ "18 (sic)" which the court understands as the second of the paragraphs numbered 18.

work environment "involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, ——, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002). The unlawful employment practice in a hostile work environment "occurs over a series of days or perhaps years and, in direct contrast to [claims based upon] discrete acts, a single act of harassment may not be actionable on its own." *Id.* "Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within [the applicable time period] of any act that is part of the hostile work environment." *Id.* at 2075; *see also McFarland v. Henderson,* 307 F.3d 402, 408 (6th Cir.2002). Having already concluded that none of the alleged incidents comprising the hostile environment claim occurred within the limitations period, the court finds that the plaintiff's hostile work environment claim is time-barred.

The court also said in its prior order that the plaintiff had not pleaded sufficient facts in support of his constructive discharge claim. (Dk.15, p. 15). The plaintiff made no changes to his conclusory allegation of this claim:

> Plaintiff alleges he was constructively discharged effective July 30, 1999, in that, the adverse disparate treatment he was subjected to over an extended period of time created intolerable working conditions such as that no reasonable person would be expected to continue in their employment.

(Dk. 1, ¶ 15; Dk. 18, ¶ 23). The only adverse disparate treatment alleged with specificity in the amended complaint are the same four discriminatory acts all of which this court has concluded are outside the limitations period based on the allegations in the plaintiff's complaint or his

failure to contest the defendant's motion. The defendant challenges this claim as not only untimely but as insufficiently alleged.

 Constructive discharge occurs "when 'the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.'" *Sanchez v. Denver Public Schools,* 164 F.3d 527, 534 (10th Cir.1998) (quoting *Derr v. Gulf Oil Corp.,* 796 F.2d 340, 344 (10th Cir.1986)). "The bar is quite high in such cases: a plaintiff must show he had no other choice but to quit." *Garrett v. Hewlett Packard Co.,* 305 F.3d 1210, 1221 (10th Cir.2002) (citation omitted). In determining when a constructive discharge claim accrues, courts generally look to the date of the employee's resignation or the date of the employee's announced resignation, whichever is earlier. *See Flaherty v. Metromail Corp.,* 235 F.3d 133, 138 (2nd Cir.2000). "However, 'if a plaintiff does not resign within a reasonable time period after the alleged harassment, he was not constructively discharged.'" *Gonzalez Garcia v. Puerto Rico Elec. Power Auth.,* 214 F.Supp.2d at 204 (quoting *Landrau–Romero v. Banco Popular De P.R.,* 212 F.3d 607, 613 (1st Cir. 2000)). Thus, if no "act of harassment [is alleged to have] occurred within a reasonable time of her [plaintiff's] resignation," then the "[p]laintiff has not stated a timely claim of . . . constructive discharge." *Id.* (Nine-month gap between last act of harassment and resignation is too long); *see Ulibarri v. Lopez,* 99 F.3d 1151, 1996 WL 594281, at *2 (10th Cir.1996) (That the resignation occurred within the limitations period is not enough unless there is also "some additional act attributable to his employer—some straw that broke the came's back."). The last specifically alleged act of disparate treatment is the disciplinary memorandum dated February 16, 1999, approximately five and one-half months prior to the plaintiff's resignation.

This act did not occur within the limitations period, and the gap stretches the bounds of a reasonable time period. Thus, the facts as alleged do not support a timely claim of constructive discharge. The court, however, will assume this claim was timely filed and consider the whether the plaintiff has alleged a constitutional violation that defeats the defense of qualified immunity.

## QUALIFIED IMMUNITY

In its prior order, the court directed the plaintiff to amend his complaint with specific, non-conclusory factual allegations in support of his equal protection claim. Based on the instances of disparate treatment in the amended complaint that have been alleged with sufficient specificity, the court finds beyond doubt that the plaintiff can prove no set of facts in support of his constructive discharge claim which would entitle him to relief. What the plaintiff alleges as acts of disparate treatment, individually and in combination, simply do not amount to working conditions so difficult that a reasonable person in his position would feel compelled to resign.

The plaintiff alleges the selection of investigators to attend the annual national convention was a "reward" for the top performers. (Dk.18, ¶ 10). The discriminatory denial of this kind of "reward" does not qualify as a difficult working condition and arguably does not even constitute an adverse employment action. *See, e.g., Murray v. Chicago Transit Authority,* 252 F.3d 880, 888 (7th Cir.2001) (refusal to approve travel plans to conference is not a tangible employment action); *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir. 1998) (denied opportunity to attend conference is not an adverse employment

action), *cert. denied,* 526 U.S. 1065, 119 S.Ct. 1457, 143 L.Ed.2d 543 (1999); *Duran v. New Mexico Dept. of Labor,* 143 F.Supp.2d 1278, 1285 (D.N.M.2001) (refused permission to attend conference is not a material adverse employment action), *aff'd,* 26 Fed. Appx. 880, 2002 WL 120527 (10th Cir.2002). That the defendant chose to suspend the normal office procedure and to supervise directly one of the other investigators plainly has no impact on the defendant's working conditions. The mere restriction on the plaintiff's direct contact with KHRC commissioners seems consistent with an employment policy for following the chain of command and does not support on its face any other negative inference. Nor does the plaintiff allege how this restriction negatively impacted his working condition or affected a term or condition of his employment. Finally, the written reprimand for unauthorized telephone calls does constitute an adverse employment action, *Hysten v. Burlington Northern and Santa Fe Ry. Co.,* 296 F.3d 1177, 1183 (10th Cir.2002), but the discipline and restrictions alleged in the complaint,[5] with the exception of the probationary period, are what reasonable persons would consider to be typical or standard terms of employment rather than difficult or intolerable working conditions. The court finds that the plaintiff has not alleged a claim for constructive discharge and, thus, has not alleged the deprivation of a constitutional right.

IT IS THEREFORE ORDERED that the defendant's motion to dismiss (Dk.19) is granted.

---

5. As alleged in the amended complaint, the discipline was that he "was placed on a strict 90 day probation, restricted to work from the

office, made to report to the office from 8:00 a.m. to 5:00 p.m. or restricted in his use of the phone." (Dk.18, ¶ 15).